# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ROBIN BETZ, individually and on behalf of all others similarly situated,**
    Plaintiff,

v.                                        Case No. 16-C-1161

**MRS BPO, LLC,**
    Defendant.

## DECISION AND ORDER

The plaintiff, Robin Betz, brings this action against MRS BPO LLC ('MRS") under the Fair Debt Collection Practices Act ("FDCPA"). Before me now is MRS's motion to dismiss the complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

According to the allegations of the complaint, which I accept as true for purposes of this motion, the plaintiff is a "consumer" and MRS is a "debt collector" within the meaning of the FDCPA. On May 26, 2016, MRS mailed a debt-collection letter to the plaintiff regarding a debt allegedly owed to Verizon Wireless. The letter, which is attached to the complaint, states in relevant part as follows:

> Dear ROBIN BETZ,
>
> The above referenced creditor has placed your account with our office for collection. We recognize that sometimes circumstances or events can make it difficult to satisfy your financial obligations.
>
> Resolving a long overdue debt is never easy. Often the hardest part is taking the first step. We are ready to assist you to find a solution that is both fair and reasonable. You are eligible for a discount offer. We are not obligated to renew this offer.

> Simply pay 2 monthly payment(s) totaling $858.14. Your first payment of $429.07 is due by 07/10/2016. Subsequent payment(s) are due by the 10th of the month until the offer is paid in full.
>
> We have several payment options available . . . .
>
> **IMPORTANT CONSUMER INFORMATION**
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.
>
> Sincerely,
>
> MRS BPO, L.L.C.

Compl. Ex. A. Because the total amount of the debt as described in the letter was $1,144.06, MRS's "discount offer," which offered to settle the account for $858.14, represented a 25% discount off the total amount owed.

In the letter, the notice that appears below the heading "Important Consumer Information" is something that the FDCPA requires debt collectors to send to consumers within five days after it first makes contact with him or her. *See* 15 U.S.C. § 1692g(a). The information that this initial notice must contain includes, among other things, a statement that unless the debtor "disputes the validity of the debt" within 30 days the debt collector will assume that the debt is valid. If the consumer requests validation within 30 days of receiving the letter, the debt collector must "cease collection of the debt . . . until the [requested information] is mailed to the consumer." *Id.* § 1692g(b). However, unless and until the consumer requests validation (or other information the debt collector must provide), the debt collector may, within the 30-day period, continue

to engage in lawful collection activities. *Id.* But any such activities during the 30-day period may not "overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt." *Id.*

The Seventh Circuit (like other circuits) has interpreted § 1692g to require that the debt collector make the required disclosures to a consumer in a nonconfusing manner. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997). The court reasoned that it is implicit in the FDCPA "that the debt collector may not defeat the statute's purpose by making the required disclosures in a form or within a context in which they are unlikely to be understood by the unsophisticated debtors who are the particular objects of the statute's solicitude." *Id.*

In the present case, the plaintiff contends that MRS's letter violates the FDCPA because it is likely to confuse an unsophisticated consumer. The plaintiff concedes that MRS included the disclosures required by § 1692g in an appropriate form under the heading "Important Consumer Information." However, she contends that the letter's language concerning the "discount offer" leads to confusion. The letter implies that, to accept the offer, the plaintiff must make the first of two payments by July 10, 2016, which was 45 days from the date of the letter. Since the plaintiff almost certainly did not receive the letter on the same day it was mailed, to accept the discount offer, the plaintiff would have to mail a payment to the debt collector very soon after the 30-day validation period expired, or, depending on when she actually received the letter, while the 30-day period was still running. Thus, if the plaintiff requests validation during the 30-day period, the debt-collector will almost certainly not complete the validation process before the deadline to make a payment on the settlement offer passes. The

plaintiff contends that this leads to confusion because "[t]he unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offer in the letter." Br. in Opp. at 2.

For purposes of this motion, I will assume that the plaintiff is correct that the letter would cause an unsophisticated consumer to be unsure whether he or she could both request verification of the debt and preserve the settlement offer. However, this confusion relates to the settlement offer itself rather than to the plaintiff's validation rights. That is, the letter quite clearly states that the consumer has a right to request validation within 30 days of receiving the letter, and nothing in the letter either contradicts this right or apparently contradicts this right. Any confusion that arises is due to the fact that the letter leaves the consumer to wonder whether, if he or she requests validation and does not make a payment on the settlement offer by the deadline, the debt collector will later renew the settlement offer if and when the debt is validated. The problem for the plaintiff is that, as explained below, the Seventh Circuit has held that a debt collector is entitled to create uncertainty over whether it will renew a settlement offer.

In *Evory v. RJM Acquisitions Funding LLC*, the Seventh Circuit addressed a common practice among debt collectors of making settlement offers to consumers "in the idiom of limited-time or one-time sales offers, clearance sales, going-out-of-business sales, and other temporary discounts." 505 F.3d 769, 775 (7th Cir. 2007). The problem with describing a settlement offer in this fashion is that "unsophisticated consumers may think that if they don't pay by the deadline, they will have no further chance to settle their debt for less than the full amount." *Id.* In fact, "debt collectors, who naturally are

4

averse to instituting actual collection proceedings for the often very modest sums involved in the consumer debt collection business, frequently renew their offers if the consumer fails to accept the initial offer." *Id.* Thus, if a debt collector makes a settlement offer to a consumer and implies that it is available for a limited time only and will not be renewed, when in fact the debt collector almost certainly would make the same or better offer again in the future, the debt collector could be thought to have made a deceptive statement to the consumer, in violation of FDCPA provisions that prohibit deception. *See* 15 U.S.C. § 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."); *DeKoven v. Plaza Assocs.*, 599 F.3d 578, 579 (7th Cir. 2010) ("[W]hile a debt collector can, if authorized by the creditor whom he is representing, make his initial offer a final one, he cannot pretend that it is final if it is not, in the hope that the debtor will think it final.").

However, the Seventh Circuit recognized that "if the debt collector had to disclose the consequences of the consumer's rejecting his initial offer," then "the settlement process would disintegrate." *Evory*, 505 F.3d at 775. "If [a debt collector] has to say, 'We'll give you 50 percent if you pay us by May 14, but if you don't, we'll probably offer you the same or even better deal later, and if you refuse that, we'll probably give up and you'll never have to pay a cent of the debt you owe,' there will be no point in making offers." *Id.* The court then found that the concern over defeating the settlement process could be adequately addressed, and the unsophisticated consumer protected against receiving a false impression of his or her options, by the debt collector's including with the settlement offer the following language: "We are not

5

obligated to renew this offer." *Id.* at 776. The court stated that "[t]he word 'obligated' is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured." *Id.*

In the present case, MRS included the *Evory* "safe harbor" language with its settlement offer. The letter stated that the plaintiff was "eligible for a discount offer" and that MRS was "not obligated to renew this offer." Compl. Ex. A. Thus, MRS's letter conveyed to the unsophisticated consumer that there was a possibility that the offer would be renewed if it was not accepted by July 10, but that renewal was not assured. The letter therefore was not deceptive. Moreover, although the letter left the consumer uncertain as to whether she could "preserve" the settlement offer even if she requested verification of the debt, Br. in Opp. at 2, this kind of uncertainty is permitted by cases such as *Evory*. As that case recognizes, a debt collector is not required to explain exactly what will happen if the consumer does not accept the debt collector's initial settlement offer by the initial deadline. *See also DeKoven*, 599 F.3d at 580 (reiterating that the FDCPA does not require a debt collector to "reveal his negotiating strategy").

The plaintiff suggests that the FDCPA forbids a debt collector from making a settlement offer to a consumer during the 30-day verification period unless the debt collector also promises that, if the consumer requests verification, the debt collector will make the consumer the same offer after the debt is verified. Br. in Opp. at 2. The plaintiff contends that if the debt collector does not make such a promise, the offer will have "the practical effect of discouraging consumers from disputing debts." *Id.* The plaintiff suggests that a consumer's desire to take advantage of the settlement offer might result in her not making a validation request that she would otherwise have made,

6

out of fear that the debt collector would not renew the settlement offer after the validation process was over.

I will assume for purposes of the defendant's motion to dismiss that a debt collector's making a settlement offer during the 30-day period without promising to renew the offer if the consumer requests validation could have the effect of encouraging the consumer to accept the offer rather than dispute the debt. However, the plaintiff points to no provision of the FDCPA or the cases interpreting it holding that a settlement offer cannot have this effect. And I have been unable to find any authority indicating that a consumer cannot be given an incentive to settle her account for less than the amount owed rather than exercise her validation rights. To the contrary, all of the authority I have found indicates that settlement offers that expire either during or shortly after the 30-day validation period are lawful.

In *DeKoven v. Plaza Associates*, the Seventh Circuit considered a letter in which a debt collector offered to settle the consumer's account for 65% of the balance due and in which the debt collector made the debt-validation disclosures required by § 1692g. 599 F.3d at 578. The letter stated that the settlement offer would be valid for a period of 35 days from the date of the letter. *Id.* The issue in *DeKoven* was whether the letter, which did not use the safe-harbor language from *Evory*, implied that the initial settlement offer was the debt collector's final offer and thus was misleading or deceptive. The court was not asked to determine whether the creditor violated the FDCPA by making the settlement offer in the same letter as the debt-validation notice and setting the deadline for acceptance close to the end of the 30-day period for the consumer to request validation. However, it is noteworthy that the court did not even

comment on the fact that the settlement offer was made during the 30-day period and that the offer expired, at most, five days after the end of the 30-day period. If, as the plaintiff contends, the creditor's making such a settlement offer violates the FDCPA, it seems likely that the court would have flagged this issue.

Moreover, several federal district courts have held that a debt collector does not violate the FDCPA by making a settlement offer that expires either during or shortly after the 30-day period for requesting verification. First, in *Harrison v. NBD Inc.*, a judge on the Eastern District of New York held that a settlement offer that was made in the same letter as the debt-validation notice, and which expired *before* the end of the 30-day validation period, did not violate the FDCPA. 968 F. Supp. 837, 845–48 (E.D.N.Y. 1997). The judge reasoned as follows:

> Debt collection is not required to cease during the thirty day validation period unless the debtor has indicated to the debt collector during the thirty day period that she or he disputes the debt. [The debt collector's] letter did not state that "immediate" payment was due nor does the discount offer impart the impression that the plaintiff must dispute the debt in less than thirty days or mislead the plaintiff as to her rights under the FDPCA. [The debt collector's] discount offer extended an incentive for debtors to pay their account. The fact that the discount offer expires before the thirty day validation period does not provide evidence of overshadowing. If a debtor chooses to reject the discount offer, at worst, she or he would be liable for the original amount of the debt. Consequently, the Court concludes that the least sophisticated consumer would not construe [the debt collector's] discount offer as overshadowing or contradicting the validation notice.

*Id.* at 848 (citations omitted). Another judge on the Eastern District of New York followed *Harrison* in a similar case and concluded that a settlement offer did not overshadow the debt-validation notice even though it was made in the same letter as the notice and expired before or shortly after the 30-day validation period expired. *Omogbeme v. Risk Management Alternatives, Inc.*, No. 01 CV 7293, 2003 WL

21909773, at *1, 3 (E.D.N.Y. Aug. 4, 2003). In 2007, a judge on the District of Connecticut followed the New York cases. See Gervais v. Riddle & Associates, P.C., 479 F. Supp. 2d 270, 278–79 (D. Conn. 2007). This judge discussed the issue as follows:

> [E]ven if [the debt collector's] validation notice [and settlement offer] described "mutually exclusive" opportunities, this Court finds that [the debt collector's] settlement offer was clearly distinguishable from the apprisal of Plaintiff's statutory rights under § 1692g. As such, merely including a settlement offer within a validation notice does not direct a finding of overshadowing or contradiction. On the contrary, in light of persuasive precedent and policy, this Court concludes that the mere existence of a settlement offer in a validation notice is insufficient to constitute an overshadowing claim under the FDCPA as a matter of law . . . . To hold otherwise would likely dissuade debt collectors from providing consumers with discounted settlement offers—a result that would be both "unwise and against the consumers' best interests."

Id. at 278 (citations omitted). And in 2011, a district judge on the Northern District of Ohio reached the same conclusion. See Jablonski v. Capital Mgmnt. Servs. LP, No. 3:11CV903, 2011 WL 7142994 (N.D. Ohio Nov. 22, 2011). In that case, the court found that the debt collector's making a settlement offer that expired in 45 days in the same letter as it made the debt-validation disclosure did not violate the FDCPA. Id. at *3–4.

Like the district judges from these other jurisdictions, I see no reason why a debt collector cannot make a settlement offer in its initial communication to the consumer that expires either during or shortly after the 30-day period for requesting validation. The FDCPA allows the debt collector to continue to attempt to collect the debt during the 30-day validation period unless and until the consumer requests validation, and probably the most benign collection activity is to make the consumer a discounted settlement offer. So if the FDCPA permits a debt collector to file a lawsuit against the consumer during the 30-day period (which it does, see Bartlett, 128 F.3d at 501), it

would be absurd to interpret the act as forbidding the debt collector from taking the more benign step of making the consumer a settlement offer during that period. Although making the offer in the same letter as the debt-validation notice may encourage the plaintiff to accept the offer and forego validation, I see no problem with that. Nothing in the FDCPA suggests that a debt collector cannot give a consumer an incentive to simply settle the case rather than dispute that the debt is valid. To be sure, if the debt collector uses an attractive settlement offer to trick the consumer into paying a debt that the debt collector knows is invalid, then perhaps making such an offer would violate the FDCPA. But this would not be because the offer conflicts with or overshadows the validation notice. It would be because the debt collector is attempting to collect a debt that it knows is invalid and thus would be engaging in an unfair and deceptive practice. *See* 15 U.S.C. §§ 1692e, 1692f.

The plaintiff also argues that she is entitled to present extrinsic evidence (such as a consumer survey) to show that MRS's letter is likely to confuse an unsophisticated consumer. The proposition that the plaintiff would like to prove through extrinsic evidence is that the unsophisticated consumer would interpret MRS's letter to mean that MRS would not renew the settlement offer after the completion of the validation process, should the consumer request validation. Br. in. Opp. at 21. However, MRS used the safe-harbor language from *Evory*, i.e., "We are not obligated to renew this offer," and therefore, as a matter of law, MRS cannot be liable for causing a consumer to think that the initial settlement offer was the final settlement offer. Moreover, as I have already discussed, even if a consumer would wonder whether the settlement offer would be renewed after the validation process was completed, a debt collector is not

required to promise that a settlement offer will be renewed or disclose its negotiating strategy. Thus, even if the plaintiff's extrinsic evidence showed that consumers would interpret MRS's letter to mean that they might not be able to preserve the settlement offer if they requested validation, MRS would not be liable for violating the FDCPA.

The plaintiff also asks to conduct discovery on the question of when MRS mailed the letter to the plaintiff. Br. in Opp. at 22. The plaintiff seems to be arguing that if MRS mailed the letter 15 days or more after May 26, 2016, then the settlement offer would expire before the end of the 30-day validation period, which would not have begun to run until the plaintiff received the letter. However, as I have discussed, even a settlement offer that expires during the 30-day validation period does not conflict with or overshadow the debt-validation notice. *See Harrison*, 968 F. Supp. at 847. Thus, even if the plaintiff demonstrated that she did not receive the letter until June 10, 2016 or later, she would not prevail.

Accordingly, **IT IS ORDERED** that the defendant's motion to dismiss the complaint is **GRANTED**. The Clerk of Court shall enter final judgment.

Dated at Milwaukee, Wisconsin, this 26th day of April, 2017.

                                                                 s/ Lynn Adelman
                                                                 LYNN ADELMAN
                                                                 United States District Judge